UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IVAN JEROME TERRY, II | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-618-SDJ |
| | § | |
| COMMISSIONER, SSA | § | |

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. The Magistrate Judge entered a Report and Recommendation ("Report"). (Dkt. #23). In the Report, the Magistrate Judge recommended that the Court affirm the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Ivan Jerome Terry, II's claim for disability insurance benefits. Terry timely filed objections. (Dkt. #24).

The Court has conducted a de novo review of the objections and the portions of the Report to which Terry specifically objects, and the Court is of the opinion that the findings and conclusions of the Magistrate Judge are largely correct and that the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court does, however, modify and expand on the Report's findings and conclusions as to both of Terry's objections, which largely reiterate his prior arguments on appeal. Except as otherwise noted below, the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

1

# I. BACKGROUND

This is an appeal of the Social Security Administration's ("SSA") decision denying Terry's application for disability insurance benefits. The SSA's Administrative Law Judge ("ALJ") found that Terry is not disabled within the meaning of the Social Security Act and, therefore, is not entitled to disability insurance benefits. Because the SSA Appeals Council denied Terry's request for review of the ALJ's decision, the ALJ's unfavorable decision is the final reviewable decision in this case. *Sims v. Apfel*, 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); 42 U.S.C. § 405(g). Terry timely appealed that decision to this Court. (Dkt. #1). Following briefing on the matter, the Magistrate Judge entered the Report finding that Terry's arguments on appeal were without merit and recommending that the Court affirm the Commissioner's decision. (Dkt. #23). Terry timely filed two objections to the Report. (Dkt. #24).

# II. LEGAL STANDARD

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)–(3). Where a party does not object to portions of a magistrate judge's report, "the district court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996) (en banc) (cleaned up), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days). Review of the SSA's underlying disability decision "is limited to

determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Id.* (quoting *Harris*, 209 F.3d at 417).

### III. DISCUSSION

The Report describes the five-step sequential evaluation process the SSA must use in considering disability applications. (Dkt. #23 at 1–2); 20 C.F.R. § 404.1520. It also explains the SSA's procedure for evaluating mental impairments, including the degree of functional limitation and severity of any impairment, at steps two and three. (Dkt. #23 at 6–7). The Court need not rehash the process in full. Relevant here, the process includes rating the severity of several criteria related to mental impairments, known as "Paragraph B" criteria. *See* 20 C.F.R. § 404.1520a. The process also includes determining the claimant's residual functioning capacity ("RFC"), to be used in assessing the type of work a claimant is able to do. *See* 20 C.F.R. § 404.1520.

In this case, the ALJ determined that Terry's Paragraph B findings were: "moderate restrictions in understanding, remembering, or applying information"; "mild difficulties in interacting with others"; "moderate difficulties in concentrating, persisting, or in maintaining pace"; and "moderate difficulties in adapting or in

3

managing self." Tr. at 13.[1] As for Terry's RFC, the ALJ found that he was capable of understanding, remembering, and carrying out detailed but not complex instructions. Tr. at 15.

Turning to Terry's objections, he first argues that the ALJ failed to incorporate all of his functional mental limitations, adduced in the Paragraph B findings, in her finding of his RFC. Second, Terry objects that the ALJ erred in assessing treating physician Dr. Praveen Moolamalla, M.D.'s medical opinions in that the ALJ provided inaccurate and illogical explanations for her supportability finding, and that the Report's reasoning amounted to unallowable post hoc rationalizations attempting to retroactively justify the ALJ's decision.

**A. Terry's First Objection**

First, Terry objects that the ALJ failed to incorporate all of Terry's functional mental limitations, adduced in the Paragraph B findings, in her finding of Terry's RFC. Therefore, Terry argues, the Magistrate Judge should not have concluded that substantial evidence supports the ALJ's RFC finding. With this objection, Terry reiterates an argument he made in his opening brief supporting his appeal. *See* (Dkt. #20 at 8–9). The Report correctly addresses this argument and concludes that the ALJ was not required to incorporate the Paragraph B findings into the RFC, as Terry appears to assert. (Dkt. #23 at 6–8). The Court adopts the Report as to its

---

[1] (Dkt. #18-1) through (Dkt. #18-18) comprise the Administrative Record ("Tr."). As in the Report, when citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page rather than to the CM/ECF document number and page.

reasoning and recommendation regarding this argument. The Report's reasoning also applies to part of Terry's first objection.

The Court writes further on this objection to modify and expand on the Report's reasoning and the Court's conclusions on Terry's related arguments. The Report explains that Terry argues that the ALJ's RFC finding is deficient because it does not include the Paragraph B criteria. It then explains the process for making Paragraph B findings and the RFC evaluation, and it notes that the regulations do not specifically require the ALJ to incorporate word-for-word the limitations found in evaluating the mental impairment into either the RFC determination or the hypothetical questions posed to the Vocational Expert ("VE"). The Report then concludes that Terry's argument lacks merit. (Dkt. #23 at 6–8). In doing so, the Report correctly explains that, "while the regulations require the ALJ to evaluate the limitations imposed by the claimant's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if the claimant's impairments are found to be severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." (Dkt. #23 at 8 (cleaned up) (quoting *Calvert v. Colvin*, No. EP-14-CV-404-ATB, 2016 WL 3906821, at *6 (W.D. Tex. July 14, 2016))).

Though the Report correctly concludes that the ALJ was not required to incorporate the Paragraph B findings into the RFC, the Report does not directly address Terry's arguments that the ALJ failed to incorporate all of his functional

5

limitations into the RFC finding and into the hypothetical questions the ALJ posed to the VE at the hearing. More specifically, the Report does not address Terry's contention that the ALJ failed to incorporate Terry's self-reported limitations.

With this objection, Terry reiterates his argument that the ALJ "did not account for such specific, more detailed, work-related limitations of function, or offer an explanation as to why such specific limitations were excluded from the RFC finding." (Dkt. #24 at 3). The limitations Terry references are his stated "need for reminders to care for grooming and to take medication; difficulty following written instructions; ability to finish what was started half the time, or not at all; and difficulty handling stress or changes in routine well." (Dkt. #24 at 3 (citing Tr. at 13)). Notably, these are subjective limitations that Terry self-reported, not the ALJ's findings, although Terry seems to suggest they should be. *See* (Dkt. #24 at 2–3). And importantly, the ALJ "considered [Terry's] subjective complaints" noted throughout his medical records and in Terry's hearing testimony in making her Paragraph B determinations. *See* Tr. at 13 (detailing Terry's subjective complaints—including his reported need for reminders regarding grooming and medication, difficulty following written instructions, ability to finish tasks, among others—throughout four paragraphs in her findings of facts and conclusions of law as they pertain to her Paragraph B findings (citing to exhibits 7E and 13E, which are reports that Terry filled out)).

To be sure, "the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)

6

(citing *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir. 1981)).And here, the ALJ specifically noted Terry's subjective complaints in making her Paragraph B findings. Just as the relevant regulations do not require the ALJ specifically to incorporate Paragraph B findings in the RFC determination, there is similarly no requirement for the ALJ specifically to incorporate Terry's subjective complaints in her RFC finding.

Arguing otherwise, Terry relies on *Warren v. Comm'r, SSA* for its holding that because "the ALJ's RFC does not account for all the Plaintiff's limitations resulting from her impairments, it is not supported by substantial evidence." No. 4:19-CV-302, 2020 WL 5849869, at *3 (E.D. Tex. Oct. 1, 2020); (Dkt. #24 at 3). But *Warren* is inapt. There, the court noted that while the ALJ "acted within his discretion by finding [certain medical opinions] unpersuasive, . . . this does not explain why the Plaintiff's RFC excludes manipulative limitations" that the ALJ's decision otherwise readily acknowledged Plaintiff suffered from. *Id.*

In Terry's case, by contrast, the ALJ based her determinations regarding Terry's mental limitations on findings made by DDS psychological consultants Dr. Mathew Turner, Ph.D. and Dr. Sallie Boulos-Sophy, Ph.D., Tr. at 17, as well as the opinion of DDS psychological consultant Dr. Nicole Bereolos, Ph.D., which the ALJ concluded was consistent with the DDS psychological consultants' opinions. Tr. at 17–18. The ALJ then determined that Terry had an anxiety disorder that was severe, but not severe enough for him to qualify as disabled on this condition alone. Tr. at 12–14. In articulating her assessment of Terry's RFC, the ALJ stated that she

7

found Dr. Turner's findings persuasive. Tr. at 17. In addition, the ALJ noted she was incorporating into her RFC assessment Dr. Turner's RFC finding, in light of mild and moderate mental limitations, that Terry was capable of understanding, remembering, and carrying out detailed but not complex instructions. Tr. at 17. Thus, in contrast to *Warren*, in which the ALJ acknowledged the plaintiff's right-hand limitations several times before failing to address that issue in the ultimate RFC determination, the ALJ in Terry's case incorporated Terry's mild and moderate functional mental limitations in her RFC determination.

Furthermore, the issue "is not whether the ALJ erred in failing to incorporate" Paragraph B findings in the claimant's RFC, but whether the ALJ's RFC determination "is supported by substantial evidence in the record." *Mendez v. Saul*, 2021 WL 1217376, at *11 (S.D. Tex. Jan. 6, 2021), *report and recommendation adopted*, 2021 WL 1215842 (S.D. Tex. Mar. 31, 2021) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). Here, the ALJ pointed to substantial evidence in the record documenting Terry's mild and moderate mental limitations and supporting the ALJ's RFC determination that Terry is capable of understanding, remembering, and carrying out detailed but not complex instructions. Thus, in contrast to the ALJ's RFC determination in *Warren*, which did "not account for all the Plaintiff's limitations resulting from her impairments [and thus was] not supported by substantial evidence," 2020 WL 5849869, at *3, the ALJ's RFC here expressly accounts for Terry's mental limitations and is supported by substantial evidence. Because the combined conclusions of Dr. Turner, Dr. Boulos, and Dr. Bereolos provide

8

substantial support for the ALJ's mental RFC finding, and because the ALJ explicitly adopted those findings, Terry's challenge on this ground must fail.

Terry also appears to challenge the sufficiency of the hypothetical questions the ALJ posed to the VE, together with the VE's resulting testimony, regarding the kinds of jobs an individual with Terry's hypothetical RFC could handle. *See* (Dkt. #20 at 8); (Dkt. #24 at 3). This challenge is also without merit.

Terry quotes *McGowan v. Saul* for the proposition that because an ALJ posed questions to the VE that "did not incorporate all of Plaintiff's limitations . . . reliance on the VE's testimony cannot stand." No. 4:20-CV-282, 2021 WL 799325, at *10 (S.D. Tex. Jan. 6, 2021), *report and recommendation adopted*, 2021 WL 951859 (S.D. Tex. Mar. 10, 2021). While the Court agrees that the quoted proposition from *McGowan* is sound, that situation is simply not present here. In the instant case, the ALJ's questions to the VE included the hypothetical that "this person can understand, remember, carry out detailed, but not complex tasks." Tr. at 57–58. This hypothetical also noted that the individual could have occasional interaction with the general public as part of their job duties. Tr. at 57–58. Finally, the ALJ reframed the hypothetical to contemplate an individual that had the ability to complete only "simple and routine tasks" with no ability to contact the general public, and the VE continued to affirm that all of the potential jobs he identified in response to the first hypothetical question would nonetheless be available under the conditions of the more limited hypothetical. Tr. at 59.

9

In a decision that speaks directly to the facts of this case, the Fifth Circuit has held that a hypothetical that includes "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon v. Astrue*, 281 F.App'x 418, 423 (5th Cir. 2008) (per curiam). And other courts within this circuit have held that "an RFC limited to 'simple work' reasonably incorporates a moderate or even marked limitation in concentration, persistence, or pace." *Smith v. Colvin*, No. 3:13-CV-1884, 2014 WL 1407437, at *4 (N.D. Tex. Mar. 24, 2014) (quoting *Ricks v. Colvin*, No. 12–2647, 2014 WL 333911, at *8 (W.D. La. Jan. 29, 2014)), *report and recommendation adopted*, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014). The ALJ's hypothetical questions noted above therefore reasonably incorporated Terry's mild and moderate mental limitations.

In sum, substantial evidence in the record supports the ALJ's mental RFC finding. Terry's first objection is therefore overruled.

**B. Terry's Second Objection**

Second, Terry argues that the ALJ erred in assessing the medical opinions of Dr. Moolamalla, Terry's treating physician, regarding Terry's mental limitations. In this regard, Terry contends that the ALJ provided inaccurate and illogical explanations for her supportability finding. Specifically, Terry avers that the ALJ failed properly to explain the "supportability" factor as required by 20 C.F.R. § 404.1520c(b)(2) in her evaluation of Dr. Moolamalla's opinions. Notably, this

objection takes a different tack from Terry's original argument concerning 20 C.F.R. § 404.1520c(b)(2), which focused on the ALJ's alleged deficiencies with respect to the "consistency" factor. *See* (Dkt. #20 at 16) (arguing that the ALJ "did not articulate an explanation of how Dr. Moolamalla's medical opinions are inconsistent with the other medical or non-medical evidence of record").

To begin, 20 C.F.R. § 404.1520c(b)(2) *requires* that the ALJ "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." In this context, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence," whereas "[c]onsistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (cleaned up) (quoting 20 C.F.R. § 404.1520c(c)(1) ("supportability") and 20 C.F.R. § 404.1520c(c)(2) ("consistency")); *see also Bakke v. Kijakazi*, --- F.4th ---, 2023 WL 2473109 at 5 (7th Cir. 2023) (finding no error where the ALJ evaluated medical opinions for their "*consistency* with the record *and* internal *supportability*," citing 20 C.F.R. § 404.1520c(b)(2) (emphases added)). At bottom, "supportability" is an inward-facing concept, requiring the ALJ to evaluate how well a given medical opinion is supported on the strength of the opinion's own reasoning, while "consistency" is an outward-facing concept, requiring the ALJ to evaluate how consistent a medical opinion is with other evidence in the record.

Terry further argues that the Magistrate Judge's "thorough explanation of the evidence of record supporting the ALJ's supportability finding" in pages 15–18 of the Report amounted to unallowable post hoc rationalizations attempting retroactively to justify the ALJ's decision, all in violation of *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). (Dkt. #24 at 3).

It is true that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If a court is to uphold an agency's decision, it must be "on the same basis articulated in the order by the agency itself," as courts may not substitute their discretion for the agency's. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) (quoting *Chenery Corp.*, 332 U.S. at 196). Terry is thus correct that reviewing courts may not engage in or rely on "post hoc rationalizations that go beyond the grounds the ALJ invoked in the decision." *Warren*, 2020 WL 5849869, at *2 (concluding that the Commissioner's "attempts to bolster the ALJ's RFC determination by pointing to selective parts of the 'unpersuasive' consultants' opinions, as well as medical records not discussed in the decision," amounted to post-hoc rationalization). But the Report evidences no such "post-hoc rationalization" of the supportability factor in the ALJ's decision.

The portion of the Report that Terry asserts includes post-hoc rationalizations was aimed at addressing Terry's original contention that the ALJ "did not comply with the articulation requirements of [20 C.F.R. § 404.1520c]." (Dkt. #20 at 17). However, while Terry cited 20 C.F.R. § 404.1520c(c)(2) ("consistency") in his original

12

brief for the proposition that the ALJ "did not articulate an explanation of how Dr. Moolamalla's medical opinions are *inconsistent* with the other medical or non-medical evidence of record," (Dkt. #20 at 16) (emphasis added), the Report incorrectly focused on the "supportability" factor of 20 C.F.R. § 404.1520c(c)(1). Further muddying the waters, in his objection to the Report, Terry appears to have abandoned his original 20 C.F.R. § 404.1520c(c)(2) "consistency" argument in favor of attacking the Report's proffered 20 C.F.R. § 404.1520c(c)(1) "supportability" analysis. (Dkt. #24 at 3–4).

Concerning the supportability factor, the Report correctly concluded that the ALJ satisfied her obligation under 20 C.F.R. § 404.1520c(c)(1), as the ALJ performed a straightforward supportability analysis:

> Dr. Moolamalla's treatment notes for 2016, 2017, and 2018, are fairly unremarkable and **do not support** his extreme findings. (Exhibit 4F/2-9). His additional treatment notes for 2018 and 2019 are similar. (Exhibit 11F/3-9). The claimant is oriented and his memory is good with usually no notations about poor concentration. Although on occasions, the claimant's concentration is fair to poor. His psychiatrist usually notes counseling the claimant about his mood and the claimant suffers anxiety. The claimant's longevity and frequency of treatment also does not reflect what one usually finds with debilitating psychological impairments.

Tr. at 16 (**emphasis added**). The Report's endorsement of this analysis in no way runs afoul of *Chenery Corp.*'s command that an agency decision be affirmed only on grounds advanced by the agency itself. It is clear that the citations in the Report were included to show that the ALJ's satisfied the "supportability" analysis—not as post-hoc rationalization.

This objection is therefore also overruled.

### C. "Consistency" and Harmless Error

Although the Court has overruled Terry's objections, its analysis of the Report and the ALJ's decision is not complete. Unobjected-to portions of a Report are still reviewed for clear error, and as previously noted, 20 C.F.R. § 404.1520c(b)(2) *requires* that the ALJ "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." Moreover, in Terry's original brief to the Court, he explicitly argued that the ALJ "did not comply with the articulation requirements of [20 C.F.R. § 404.1520c]," (Dkt. #20 at 17), specifically citing 20 C.F.R. § 404.1520c(c)(2) for the proposition that the ALJ "did not articulate an explanation of how Dr. Moolamalla's medical opinions are *inconsistent* with the other medical or non-medical evidence of record," (Dkt. #20 at 16) (emphasis added).

The Court agrees with Terry on this point. A review of the relevant portion of the ALJ's decision makes clear that she did not explain how Dr. Moolamalla's opinion was either consistent or inconsistent with the medical evidence of record. Instead, immediately following her analysis of the internal "supportability" of Dr. Moolamalla's opinions, the ALJ simply recited in the next paragraph various other aspects of the medical record without ever explicitly explaining how those aspects of the record relate to the "consistency" factor 20 C.F.R. § 404.1520c(c)(2), leaving such analysis to the imagination of the reviewing jurist. Therefore, per *Chenery Corp.*, it would be an impermissible exercise for this Court to speculate as to how various portions of the record are "inconsistent" with Dr. Moolamalla's opinion. Accordingly, the Court does not agree with the Report's conclusion that it is "able to follow the

14

ALJ's reasoning" as to the consistency factor, (Dkt. #23 at 14), and instead concludes that the ALJ committed error by not explicitly considering the "consistency" factor prescribed by 20 C.F.R. § 404.1520c(c)(2).

Having found that the ALJ committed error concerning the "consistency" factor prescribed by 20 C.F.R. § 404.1520c(c)(2), the Court must apply harmless error analysis to the ALJ's decision. *See Shineski v. Sanders*, 556 U.S. 396, 407–08, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (holding that the doctrine of harmless error applies to administrative rulings). In conducting such analysis, the Court notes that Terry bears the "burden of showing that any error was prejudicial." *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (citation omitted). Instructive here is the Fifth Circuit's recent decision in *Miller v. Kijakazi*, which addressed harmless error in the context of an ALJ's failure to "explain how she considered the supportability and consistency factors as required by § 404.1520c(b)(2)." 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (cleaned up). As explained by *Miller*:

> Miller misunderstands her burden here. The ALJ's error was that she did not provide sufficient explanation of her consideration of the medical opinions. As set forth above, her decision makes clear that she considered them. She acknowledged that the opinions contained more limiting restrictions, but she did not find them persuasive. *Miller fails to show that if the ALJ had given further explanation, then she would have adopted them*. Miller is essentially asking us to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which we cannot do. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). In sum, Miller fails to show how the ALJ's error was harmful.

*Miller*, 2023 WL 234773, at *4 (emphasis added). The Fifth Circuit's analysis in *Miller* applies equally here—Terry has failed to meet his burden showing that he was prejudiced by the ALJ's failure to provide sufficient explanation of her consideration

15

of Dr. Moolamalla's medical opinion. Instead, Terry argues only that his "substantial rights have been affected by . . . [the ALJ's] failure to comply with the regulatory criteria for evaluating the persuasiveness of medical opinion evidence." (Dkt. #20 at 17). This argument is insufficient to merit remand.

## IV. Conclusion

Based on the foregoing reasons, the Court concludes that Terry's Objections to Report and Recommendation of United States Magistrate Judge, (Dkt. #24), are **OVERRULED**. It is therefore **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**So ORDERED and SIGNED this 21st day of March, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE